DAVIS, Judge.
G.V.W., Jr., seeks review of the final judgment dissolving his marriage to L.M.W. He challenges, among other things, the trial court’s imputation of $50,000 in gross annual income to him, and the child support calculations that are based on that income. He also challenges the trial court’s assessment of the value of his law practice and software sales company, and the equitable distribution provisions that are based on those assessments. We reverse as to these issues and affirm without discussion as to the remaining issues.
The husband and wife were married in 1981. During the marriage, the husband attended law school and, upon graduation, went to work for the law firm owned by his father-in-law. While working for his father-in-law, the husband also did some tax preparation work and operated a computer software company.
In assessing the husband’s ability to pay child support, the trial judge was presented with the parties’ testimony at trial, the husband’s financial affidavit, and the testimony of an expert vocational counselor and a clinical psychologist. The parties’ testimony revealed that while employed as an attorney by his father-in-law, the husband earned approximately $25,000 annually. Although he earned additional income from tax preparation in 1997 prior to the parties’ separation, that income came from individuals who were his father-in-law’s clients. He could not reasonably expect to continue to earn such additional income without his familial contacts. The husband’s third source of income, his computer software company, suffered a net loss.
The husband’s private legal practice, which he opened after the parties separated and he was terminated from the law firm, generated less than $20,000 in income in 1998. The husband’s current financial affidavit showed a gross monthly income of $2,539.07, or a yearly gross of $30,468.00. He testified to a gross monthly income of $2,000, or a yearly gross of $24,000.00.
In an attempt to demonstrate that the husband was underemployed, the wife presented the testimony of a vocational rehabilitation counselor. She testified that she had performed a vocational assessment of the husband, surveyed local law firms and employers, and researched statistical wage surveys of attorneys employed in the local area. She concluded that the husband was capable of earning a gross income of $50,000 annually. On cross-examination, however, she admitted that her opinion did not take into account any physical or emo *535 tional limitations that the husband may suffer.
In addressing the primary residence and visitation issues regarding the children, the wife presented the expert testimony of a clinical psychologist who performed psychological evaluations of the parties’ four minor children and the parties themselves. The expert concluded that the husband is “a very emotionally troubled man,” who requires on-going therapy to help him deal with the pain of day-to-day stress. On cross-examination, the psychologist agreed that the husband is afraid of the responsibility of making money, considers himself ineffective in holding a job, has difficulty in impulse control, and has poor organizational skills. The psychologist agreed that all of these factors would interfere with the husband’s ability to function as an attorney.
Although the trial court imputed $50,000 in gross annual income to the husband, the record shows that the husband has never earned even close to this amount in his own capacity. This was error. See Stein v. Stein, 701 So.2d 381 (Fla. 4th DCA 1997). In the one year that he arguably approached this figure, he only earned the additional income because of the good will of his father-in-law, a benefit which he no longer enjoys. Although the trial court heard the testimony of the vocational expert, her testimony must be considered along with that of the psychologist. See Stewart v. Rich, 664 So.2d 1145 (Fla. 4th DCA 1995). The education of an individual may indicate the capacity to earn; however, it does not guarantee the ability to earn when that individual suffers from other limitations. Id.
Additionally, the trial court made no findings that the husband failed to use his best efforts to find employment that would earn the imputed amount of income, nor does the record indicate that any evidence was presented that would support such a finding. See Edwards v. Sanders, 622 So.2d 587 (Fla. 1st DCA 1993). Further, the trial court did not make a finding that the underemployment was voluntary. See Brock v. Brock, 695 So.2d 744 (Fla. 1st DCA 1997). Without these findings, in light of the husband’s emotional limitations and the lack of competent evidence indicating that he had earned such an income in the past, we conclude that the trial court abused its discretion in imputing $50,000 in gross annual income to the husband. Accordingly, we reverse not only the provision of the final judgment that imputes $50,000 in gross income to the husband, but also the provision that specifies the husband’s child support obligations, which is based on that improper imputation.
The husband also challenges that portion of the equitable distribution schedule that assigns a $5000 value to his law practice and a $5000 value to his software sales corporation. Our review of this record discloses no evidence upon which the trial court could base such valuations. Accordingly, we reverse these findings and remand for a proper determination and an adjustment to the equitable distribution scheme, if necessary. See McAvoy v. McAvoy, 662 So.2d 744 (Fla. 5th DCA 1995).
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
ALTENBERND, A.C.J., and WHATLEY, J., concur.